## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| Luz Maria Burton, | ) | |
| | ) | |
| Petitioner/Defendant, | ) | Civil Action No. 12-342-CG |
| | ) | |
| v. | ) | Criminal No. 10-179-CG-N |
| | ) | |
| United States of America, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

Petitioner Luz Maria Burton, a federal prison inmate represented by counsel, has filed a timely motion to vacate, set aside, or correct her sentence, and brief in support, pursuant to 28 U.S.C. § 2255 (Doc. 106). The United States has filed a response in opposition (Doc. 111). And Burton has replied. (Doc. 112.) This action is now before the undersigned United States Magistrate Judge for entry of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 8(b) of the Rules Governing Section 2255 Proceedings. For the reasons explained herein, it is **RECOMMENDED** that Burton's § 2255 petition be **DENIED** and that the Court find that she is not entitled to a certificate of appealability and is therefore not entitled to appeal *in forma pauperis*.

## I.      Underlying Criminal Case

A four-count indictment (Doc. 1) was returned against Burton and Codefendant Bladimir Riascos Arbodela, in July 2010, in which Burton was named in three counts—one count for conspiracy to possess with the intent to distribute

more than five kilograms of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count One); and two substantive counts for distribution of cocaine and crack cocaine, in violation of § 841(a)(1) (Counts Three and Four, respectively).  Pertinent to Burton's habeas petition, the Penalty Page attached to the indictment provides that the sentencing range for Count One is ten years to life.  (Compare Doc. 1-1, with § 841(b)(1)(A)

Burton initially appeared before, and was arraigned by, the undersigned on August 17, 2010.  (*See* Docs. 11, 12.)  Retained counsel, Virginia Parker appeared on behalf of Burton.  (*See id.*)  And Burton was ordered detained pretrial.

A probation office conference, at which Burton was afforded early insight into her probable guideline sentencing range should she be found guilty, was conducted September 9, 2010.  (*See* Doc. 26.)  In attendance were Burton, her counsel, Interpreter Maria Papp,[1] and an Assistant United States Attorney.  The report of that conference (Doc. 26) reflects that, for sentencing purposes, (1) the three counts of the indictment would be grouped and would be estimated to yield a base offense level of 28; (2) possible enhancements based on Burton's manager/supervisor role in the conspiracy, and for obstruction of justice, could adjust the offense level to 33; and (3) based on Burton's criminal history category (I) and an adjusted offense level of 33, varying reductions based on acceptance of responsibility, if any, would produce guideline sentencing ranges of 97-121 months, 108-135 months, and 135-168 months.

---

[1]  Burton is from Colombia, and her native language is Spanish.

The next day, Parker filed a motion requesting that the Court set aside funds to allow Parker to hire a translator to assist her in Burton's defense (Doc. 27).[2] On September 21, 2010, the Court conducted a hearing regarding this motion and granted it. (*See* Doc. 37.)

A pretrial conference was conducted September 14, 2010, with the expectation that Burton would be tried in October 2010. (*See* Doc. 36.)[3] The October 2010 trial setting was, however, continued to November 2010. (*See* Docs. 41, 44.)[4] And, on October 8, 2010, a change of plea hearing was set for October 22, 2010. (*See* Doc. 48.) But that hearing was continued at the request of Burton's counsel—who, as of October 19, 2010, had not been able to meet with Burton and the translator to review the plea agreement. (*See* Doc. 51; *see also* Doc. 52 (order continuing hearing).)

Once a change of plea hearing was conducted, on October 28, 2010, Burton withdrew her intent to plead guilty, and the Court reset her case for trial in November 2010, with jury selection on November 1, 2010. Magistrate Judge

---

[2] In this motion, Parker reported that she spoke Spanish, but that some of the discovery provided by the United States was "totally in Spanish" and parts of it were beyond her comprehension. Parker further asserted that a translator was needed to accompany her to meetings with Burton.

[3] The order memorializing that conference reflects that there was a "[s]trong possibility" that Burton would plead guilty. (*Id.*, ¶ 10.)

[4] In the motion to continue, filed September 21, 2010, counsel informed the Court that the United States did not provide a plea agreement until the afternoon of September 20, 2010, and that while there was "a good chance this case will plead out," counsel had not had a chance to meet with the interpreter to review discovery. (*See* Doc. 41; *see id.*, ¶ 10 ("Without being given the chance to review all the discovery, there is no way in good conscience, I can advise my client that [pleading guilty] is in her best interest.").)

Milling presided over jury selection that day, after denying Burton's handwritten letter motion to continue (Doc. 55). That letter motion, addressed "to whom it may concern" and "attn.: Ginger Parker," thanks Parker for her service—"I appreciate the help and services you gave me in the beginning of my case."—but indicates that Burton and her daughters had decided to hire new counsel, Brent Wasserstein. Parker nevertheless continued to act on Burton's behalf, and filed the next day a motion to have Burton transferred to pretrial custody in Mobile County, to facilitate trial preparation (Doc. 57).

On November 3, 2010, a written plea agreement (Doc. 63) was filed, in which Burton stated it was her intent to enter a plea of guilty as to Count One, for violation of § 846, "conspiracy to possess with intent to distribute cocaine, a Schedule II controlled substance" (*id.* at 1). Pertinent to Burton's habeas petition, the written plea agreement provided that the applicable mandatory sentencing range for this violation of § 846 begins at five years. (*Compare id.* at 4, ¶ 12(a), *with* 21 USC § 846 ("Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.").)[5]

A second change of plea hearing was set for, and conducted on, November 4,

---

[5]     Also pertinent to Burton's habeas petition, the written plea agreement and the attached, incorporated factual resume do not specify that Burton is pleading guilty to a "specific amount or type of controlled substance[.]" (*See, e.g.,* Doc. 63, factual resume, at 14 ("The Government has alleged that more than 500 grams of cocaine was involved in the scheme."); 20 ("The parties do not agree on the amount or type of controlled substance that constitutes relevant conduct. If the parties do not reach an agreement on the relevant conduct prior to the sentencing hearing, the parties agree that the Court will make that determination at the sentencing hearing.").)

2010 (*see* Doc. 64). On that date, Judge Granade accepted Burton's plea of guilty to Count One of the indictment. (*See* Docs. 66, order on guilty plea; 105, change of plea hearing tr.). During the plea colloquy, Burton acknowledged that she had had an opportunity to read and discuss the plea agreement with counsel, that she understood the terms of the plea agreement, that the plea agreement stated the entirety of her agreement with the Government, and that no one had made any other or different promises or assurances to her of any kind in an effort to persuade her to—or in any way forced her to—plead guilty. Also during the plea colloquy, Judge Granade repeated the sentencing range contained in the written plea agreement:

> THE COURT: . . . The maximum penalty that the Court could impose upon conviction of this guilty plea or of this offense, rather, is a minimum five years' imprisonment, up to a maximum 40 years' imprisonment, a fine not to exceed $2 million, a term of supervised release of four years which would follow any term of imprisonment, and if you violated the conditions of supervised release you could be imprisoned for that entire term as well, and a mandatory special assessment of $100. Do you understand the maximum penalty the Court could impose?
>
> THE DEFENDANT: Yes.

(Doc. 105, 6:17-7:2.)

The draft presentence investigation report (the "PSR") (Doc. 68) was filed February 2, 2011. The draft PSR calculated Burton's base offense level as 36; she received a three-level increase, pursuant to U.S.S.G. § 3B1.1(b), as a manager/supervisor in the conspiracy; and she received a two-level reduction, pursuant to § 3E1.1(b), for acceptance of responsibility. On February 23, 2011, the deadline for responses to the draft PSR, the United States indicated it had no

objection to the PSR as prepared. A final PSR (Doc. 71) was filed March 1, 2011.

On March 3, 2011, however, Attorney Parker filed a motion requesting additional time to prepare a response to the PSR (Doc. 75). In her motion, Parker explained that, on November 1, 2010, Burton and Burton's family notified her that another attorney would be hired to handle sentencing. (*See id.*, ¶ 1; *compare id.*, *with* Doc. 55.) But Parker had just became aware that Attorney Wasserstein had not yet been hired, resulting in no response to the PSR on Burton's behalf being filed. Parker further informed the Court that Wasserstein was hired on March 2, 2011, and was in the process of applying for *pro hac vice* admission.[6] The Court granted this motion, and gave Burton until March 10, 2011 to respond to the PSR. (*See* Doc. 76.)

On March 27, 2011, Wasserstein filed a motion for additional time to respond to the PSR and to continue sentencing (Doc. 86). In his motion, he reports that once he was finally retained, on March 3, 2011, he was able to review the PSR (on March 4, 2011), and then met with Burton on March 9, 2011 to review the PSR. At that meeting, Wasserstein reported, "it became apparent that the Defendant revealed a lack of understanding the full extent of her guilty plea[,]" which was one of the basis for his requested continuance—"it is imperative that Attorney Brent Wasserstein have additional time to fully grasp [Burton's] own comprehension of her charges and her understanding of her guilty plea." The Court granted the motion, and reset sentencing for May 3, 2011, again extending the deadline for Burton to respond to

---

[6]    He was admitted March 10, 2011. (See Docs. 79, 80.)

the PSR, to April 19, 2011. (*See* Doc. 87.)

After being continued yet again (*see* Docs. 88, 89), sentencing finally occurred on June 7, 2011, without Burton filing a response to the PSR. (*See* Docs. 90, judgment; 91; 109, sentencing tr.) Burton was sentenced to 210 months on Count One. She did not appeal.

## II. Collateral Attack

Through her § 2255 petition, Burton alleges that she was deprived of "the effective assistance of counsel guaranteed by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 706 (1984) (Brennan, J., concurring). Although she asserts claims for ineffective assistance of counsel against both her retained attorneys at trial, Virginia Parker and Brent Wasserstein, Burton's claims on collateral review can be most easily understood as (1) a claim that her counsel was ineffective during the guilty plea process and (2) a claim that her counsel was ineffective with regard to sentencing.[7] Because "[t]he two-pronged *Strickland* test

---

[7] As the timeline above demonstrates, Parker represented Burton through entry of her guilty plea on November 4, 2010—even though Burton informed Parker on November 1, 2010 that it was her intention to hire Wasserstein. Despite Burton's written intent to hire new counsel (Doc. 55), in early March 2011, after the initial deadline to respond to the draft PSR had passed, Parker continued to act on Burton's behalf, filing a motion, which the Court granted, stating that she had just became aware that Wasserstein had not yet been retained and asking for additional time for Burton to respond to the draft PSR. The transition between Parker and Wasserstein, a transition Burton and her family set in motion in November 2010, appears to be the basis for an ineffective assistance claim that is arguably separate and apart from the guilty plea and sentencing claims. (*See* Doc. 112 at 4 (contending that Burton "is the victim of a nonprofessional level of transition between lawyers" and that "[i]t is disingenuous to parse out Burton's complaint as a matter of the ineffectiveness of her 'initial attorney' and, then later, her 'sentencing phase attorney'").) Any separate claim for "a nonprofessional level of transition between lawyers" is, however, belied by the facts of this case and, moreover, by the fact Burton was not prejudiced by any attorney "dropping the ball"—before and after Wasserstein appeared formally on Burton's behalf, the Court granted extensions to allow the filing of objections to

is [also] applicable to ineffective assistance of counsel claims arising out of the plea process[,]" *e.g.*, *Rosado v. Secretary, Dep't of Corrs.*, No. 8:09–cv–02518–EAK–EAJ, 2010 WL 2976886, at *4 (M.D. Fla. July 20, 2010) (citing *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)), the undersigned's analysis begins with a review of that familiar standard and then analyzes Burton's guilty plea and sentencing claims in turn.

## A. Ineffectiveness Standard

To establish her claims of ineffective assistance of counsel, Burton is required to show ***both*** that her counsel's conduct fell below "an objective standard of reasonableness"—the "performance prong"—***and*** that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different—the "prejudice prong." *See generally Strickland v. Washington*, 466 U.S. 668 (1984). She "bears the burden of proof" as to both prongs—"both prongs must be proved to prevail." *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001), *cert. denied sub nom. Johnson v. Nagle*, 535 U.S. 926 (2002); *accord Cooper v. Secretary, Dep't of Corr.*, 646 F.3d 1328, 1351 (11th Cir. 2011).

---

the draft PSR. (*Compare* Doc. 75, *with* Doc. 76; *compare* Doc. 86, *with* Doc. 87.)

In support of her petition, Burton very generally asserts, moreover, that Attorney Parker "did not adequately or timely prepare for the case. [She] met with Burton very few times and this in a complicated drug case that consisted of, by [Parker's] own admission, voluminous amounts of discovery, discovery[, Burton contends,] that was never reviewed with [her]." (Doc. 106, ¶ 10.) Such "vague[ and] conclusory . . . claims"—which are also clearly belied by the pleadings, as outlined above—"cannot support an ineffective assistance of counsel claim[,]" *Rosado v. Secretary, Dep't of Corrs.*, No. 8:09–cv–02518–EAK–EAJ, 2010 WL 2976886, at *4 (M.D. Fla. July 20, 2010), especially considering the "lesser duty" owed to a client who pleads guilty, *see, e.g., Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984).

To succeed on the performance prong, Burton "must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "When analyzing ineffective-assistance claims, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999) (citations omitted); *accord Michael v. Crosby*, 430 F.3d 1310, 1320 (11th Cir. 2005). That "presumption of reasonableness is even stronger when we are reviewing the performance of an experienced trial counsel." *Callahan v. Campbell*, 427 F.3d 897, 933 (11th Cir. 2005). As the Supreme Court has explained,

> "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S. at 689-90. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.* at 689. The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Id.* at 690.

*Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770, 788 (2011) (some internal citations modified or omitted); *see also Pair v. Cummins*, 373 Fed. App'x 979, 981-82 (11th Cir. Apr. 20, 2010) (per curiam) ("The performance prong['s] . . . standard is that of

a reasonable attorney, not a 'paragon of the bar' or an 'Aristotle' or a 'Clarence Darrow.'" (quoting *Dill v. Allen*, 488 F.3d 1344, 1354 (11th Cir. 2007); *Yarborough v. Gentry*, 540 U.S. 1, 11 (2003))); *Gonzalez v. United States*, Nos. 09–22386–Cv–JORDAN; 07–20759–Cr–JORDAN, 2010 WL 2367356, at *5 (S.D. Fla. Apr. 21, 2010) ("The court's role in reviewing ineffective assistance of counsel claims is not to 'grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within 'wide range of professionally competent assistance.'" (quoting *Van Poyck v. Florida Dep't of Corr.*, 290 F.3d 1318, 1322 (11th Cir. 2002))), *report and recommendation adopted*, 2010 WL 2366531 (S.D. Fla. June 14, 2010).

"The test for [deficiency, moreover,] is not whether counsel could have done more; perfection is not required. Nor is the test whether the best criminal defense attorneys might have done more." *Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir. 1995) (en banc). Rather, the inquiry under *Strickland* is limited to "whether some reasonable lawyer could have acted, in the circumstances, as defense counsel acted . . . ." *Conklin v. Schoefield*, 366 F.3d 1191, 1204 (11th Cir. 2004) (quoting *Waters*, 46 F.3d at 1518); *see also Moreno v. United States*, Criminal No. 1:06–CR–461–CC–GGB; Civil Action No. 1:10–CV–0164–CC–GGB, 2012 WL 7829200, at *4 (N.D. Ga. Mar. 13, 2012) ("The test [for deficiency] has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." (quoting *White v. Singletary*, 972 F.2d

1218, 1220 (11th Cir. 1992))), *report and recommendation adopted*, 2013 WL 1339718 (N.D. Ga. Apr. 1, 2013); *id.* ("[P]etitioner must demonstrate that 'no competent counsel would have taken the action that his counsel did take.'" (quoting *United States v. Freixas*, 332 F.3d 1314, 1319-20 (11th Cir. 2003))).

And, in order to avoid "the distorting effects of hindsight,"[8] a habeas court must "evaluate the reasonableness from counsel's perspective at the time of the alleged error in light of all circumstances of the case." *Griffin v. United States*, 204 Fed App'x 792, 794-95 (11th Cir. Oct. 25, 2006) (per curiam) (citing *Strickland*, 466 U.S. at 690). Likewise, "[t]actical decisions regarding trial strategy are left to the sound judgment of counsel and are entitled to a 'strong presumption' of competence." *Kearney v. United States*, Nos. 2:04–CR–15–1–BO; 2:09–CV–55–BO, 2010 WL 2402887, at *2 (E.D.N.C. June 14, 2010) (quoting *Strickland*, 466 U.S. at 689, and citing *Bell v. Cone*, 535 U.S. 685, 698 (2002)). For a petition challenging chosen trial strategies to be successful, therefore, it must not be "devoid of the factual basis that is required to show that counsel's tactics were manifestly unreasonable." *Id.*

In addition, Burton "must affirmatively prove prejudice" to succeed on an ineffective assistance of counsel claim. *Butcher v. United States*, 368 F.3d 1290, 1294 (11th Cir. 2004). "[T]hat the errors had some conceivable effect on the

---

[8] "*Strickland* anticipated the temptation 'to second-guess counsel's assistance after conviction or adverse sentence' and cautioned that '[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Rompilla v. Beard*, 545 U.S. 374, 408 (2005) (Kennedy, J., dissenting) (quoting 466 U.S. at 689)).

outcome of the proceeding" is insufficient to show prejudice. *Gilreath v. Head*, 234 F.3d 547, 551 (11th Cir. 2000) (alteration in original) (quoting *Strickland*, 466 U.S. at 693); *see also Evans v. Secretary, Fla. Dep't of Corr.*, 699 F.3d 1249, 1270 (11th Cir. 2012) (under *Strickland*, "a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors," and that "[t]he likelihood of a different result must be substantial, not just conceivable" (citations omitted)).

Finally, when applying the *Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied sub nom. Oats v. Moore*, 527 U.S. 1008 (1999); *see also Butcher*, 368 F.3d at 1293 ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

## B.    Guilty Plea

Burton contends that her "plea—including the plea agreement and the colloquy—was based on the incorrect information that the punishment range was five years and the representations of her counsel that she would be sentenced to [five] years." (Doc. 112, reply, at 1.)  More specifically, Burton states,

> [s]he entered into a plea agreement on November 3, 2010 but only after a difficult process and many false starts.  She insisted that she was being overcharged and that the witnesses against her were duplicitous.  She was cajoled into signing the plea agreement only after her attorney[, Ms. Parker, who does speak Spanish,] conferred with [Burton's] daughter and assured her that she would be receiving a five-year sentence.  Not only did the Plea Agreement incorrectly set out the punishment range, she was told by the court that the punishment

range began at five years. Even after the PSR showed the correct range, nothing[9] was filed. The range is important[, Burton posits] because she was informed that her sentence would be five years and it was not until much later that she realized that the higher mandatory minimum made her prospects for receiving a five year sentence impossible and that her level of punishment was much higher due to the quantity and role enhancement.

(Doc. 112 at 2 (original footnote omitted; footnote added).)

In support of her claim that she entered into a guilty plea on the assurance, made by Attorney Parker, that "she would be receiving a five-year sentence[,]" *id.*, Burton has provided the affidavit of her daughter, Carolina James (Doc. 106 at 9-10). According to James,

On the day that [her] mother was sentenced [she] was in Houston. [She] received a call from Ms. Parker (Poynter) who was present in the courtroom lockup with [Burton]. [Parker] informed [James] [ ] that [Burton] was being recalcitrant in taking her advice regarding a plea agreement. It was[, James relates,] a very stressful and emotional telephone conversation between the three of [them]. Ms. Poynter explained to [James] that the plea agreement would result in a five-year sentence for [Burton] as opposed to the danger of a 30 year sentence. It was due to [Parker's] representation to both [James and Burton] that [Burton] would be sentenced to 5 years that [James] acquiesced in [Parker's] entreaties to convince [Burton] to take the plea. The 5 year sentence[, it is James's belief,] was not presented as anything but a *fait accompli* and it was based upon [Parker's] representations that [James] pressured [Burton] to take the plea.

(*Id.*, ¶ 6.)

As applied to the plea situation, the first prong of *Strickland* remains the same in that the attorney's conduct must fall within the range of reasonable conduct. *Hill*, 474 U.S. at 58. Counsel owes a lesser duty to a client who pleads guilty than to one who goes to trial, however, and in the former case, counsel need only provide his client with an

---

[9]     It is not entirely clear what "nothing" means. But, based on footnote two in Burton's reply, "nothing" could mean either no response to the PSR or no motion to withdraw the guilty plea.

understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between entering a guilty plea and going to trial. *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). To impart such an understanding to the accused, counsel merely must make an independent examination of the facts, circumstances, pleadings and laws involved, and then offer counsel's informed opinion as to the best course to be followed in protecting the interests of the client. *Id.*

The second prong of the *Strickland* test focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Hill*, 474 U.S. at 59. In other words, in order to satisfy the prejudice requirement, a defendant claiming ineffective assistance of counsel during the plea process must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Id.* The best way to evaluate whether there is a reasonable probability a petitioner would have insisted on going to trial is to determine whether petitioner had available a defense that would likely have borne fruit at trial. *Upshaw v. Untied States*, No. 2:07-cv-111-FtM-33DNF, 2008 WL 638261, at *1 (M.D. Fla. Mar. 5, 2008) (citing *Hill*, 474 U.S. at 59).

*Rosado*, 2010 WL 2976886, at *4 (some citations modified); *see also Missouri v. Frye*, --- U.S. ----, 132 S. Ct. 1399, 1409 (2012) (which "[did] nothing to alter the standard laid out in *Hill*. In cases where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, the defendant will have to show 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" (quoting *Hill*, 474 U.S. at 59)); *id.* (further noting, "*Hill* was correctly decided and applies in the context in which it arose[,]" which is the same context the Court faces with this habeas petition).

To prove the prejudice prong of *Strickland*, Burton must, therefore, show "a reasonable probability that, but for [Parker's and Wasserstein's] errors, [s]he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at

59 (footnote omitted). Nowhere in her complaint, however, does Burton **ever allege**—**much less attempt to show**—that but for any error by counsel she "would not have pleaded guilty and would have insisted on going to trial." *Id.*; *see, e.g., Davis v. United States*, 335 Fed. App'x 825, 827 (11th Cir. June 9, 2009) (per curiam) (A "movant [who] (1) fail[s] to allege in his motion to vacate that, but for counsel's advice, he would not have pled as he did or (2) otherwise fail[s] to show special circumstances indicating that counsel's advice affected his decision to plead, [lacks an] allegation of prejudice [ ]sufficient to satisfy *Strickland*." (citation omitted)); *United States v. Mobley*, Criminal No. 10–0243–WS–C, 2013 WL 4166553, at *20 (S.D. Ala. Aug. 15, 2013) (noting the failure to make this allegation "is fatal to any claim for ineffective assistance of counsel with regard to [a] guilty plea" (citing *Davis*)).

Giving Burton the benefit of the doubt, the undersigned will assume that the basis for her "guilty plea" habeas claim is that purportedly incorrect information as to the mandatory minimum sentence—incorporated into her written plea agreement and repeated by the Court during the guilty-plea colloquy—amounts to "special circumstances indicating that counsel's advice affected [her] decision to plead[.]" *Davis*, 335 Fed. App'x at 827. And, certainly, in some instances, particularly direct appeals, it could be consequential if a court during the colloquy erroneously informs a defendant that the mandatory minimum sentence as to the count to which she was pleading guilty was five years instead of ten years, repeating a mistake memorialized in a written plea agreement. (*Compare* Doc. 105,

change of plea hearing tr., 6:17-7:2 *and* Doc. 63, plea agreement, ¶ 12(a), *with* Fed. R. Crim. P. 11(b)(1)(I) ("[b]efore the court accepts a plea of guilty[,]" it must, among other things, "inform the defendant of, and determine the defendant understands . . . any mandatory minimum penalty")).[10]

Here, however, Burton simply attempts to manufacture a Sixth Amendment claim from a possible technical violation of Rule 11. Such use of Rule 11 now—as a tool against her former counsel—makes some sense, however, given that Burton failed to make a Rule 11 claim on direct appeal. Of course, claims not presented on direct appeal cannot be made on collateral attack. *See Lynn v. United States*, 365

---

[10]     Courts "strongly presume that the defendant's statements at the guilty-plea colloquy were truthful, including his admission of guilt and his representation that he understood the consequences of his plea." *United States v. Baxley*, 402 Fed. App'x 461, 462 (11th Cir. Nov. 8, 2010) (per curiam) (recognizing this strong presumption in the context of direct appeal) (citing *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994)); *see also McCulloch v. United States*, Nos. CV410–003; CR408–045, 2011 WL 1084864, at *5 (S.D. Ga. Feb. 17, 2011) (observing same in the context of a collateral attack), *report & recommendation adopted*, 2011 WL 996785 (S.D. Ga. Mar. 21, 2011). And, as the court in *McCulloch* observed, courts reach this presumption "because of the elaborate procedures [they] undertake to head off [ ] claims [related to Rule 11]:

> The district court must "conduct an inquiry into whether the defendant makes a knowing and voluntary guilty plea." *United States v. Hernandez–Fraire*, 208 F.3d 945, 949 (11th Cir. 2000). This general obligation requires the court to address three core concerns underlying Rule 11: (1) that the guilty plea be free from coercion; (2) that the defendant understand the charges against him; and (3) that the defendant be aware of the direct consequences of his guilty plea. Rule 11 directs specifically that the court inform the defendant of, and make sure the defendant understands, certain matters. *See* FED. R. CRIM. P. 11(b)(1)(A)-(N).

*Id.* (quoting *United States v. Jackson*, 398 Fed. App'x 451, 452 (11th Cir. Sept. 30, 2010) (per curiam)). But, significantly, the Eleventh Circuit will uphold "plea colloquies that fail to address an item expressly required by Rule 11 so long as the overall plea colloquy adequately addresses the[] three core concerns." *United States v. Monroe*, 353 F.3d 1346, 1354 (11th Cir. 2003) (collecting examples); *see also Hernandez-Fraire*, 208 F.3d at 950 ("Generally, this circuit will uphold a plea colloquy that technically violates Rule 11, but adequately addresses the three core concerns." (citation omitted)).

F.3d 1225, 1234 (11th Cir. 2004) ("Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding."). Thus, any claim that the Court committed error has been procedurally defaulted: "[a] defendant who fails to object at the trial court level to error he believes the court has committed or fails to raise such objection on appeal is procedurally barred from presenting his objection in a motion subsequently filed under 28 U.S.C. § 2255 absent a showing of cause and prejudice or a fundamental miscarriage of justice," *Genge v. United States*, 279 Fed. App'x 897, 898 (11th Cir. May 30, 2008) (per curiam) (citing *United States v. Frady*, 456 U.S. 152, 166-68 (1982); *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994)), showings that Burton does not even attempt to make.[11]

---

[11]     Although procedural default can be excused if a petitioner can show "cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error[,]" *Lynn*, 365 F.3d at 1234 (emphasis omitted), Burton has failed to make such a showing in her petition. "Ineffective assistance of counsel[,]" which Burton has attempted to show, may, in some instances, "constitute cause to excuse procedural default[,]" *DiPietro v. United States*, 251 Fed. App'x 606, 608 (11th Cir. Oct. 15, 2007) (per curiam) (citing *Eagle v. Linahan*, 279 F.3d 926, 937 (11th Cir. 2001)), and "[a] defendant may avoid the need to show cause and prejudice on a procedurally defaulted claim by raising a substantive issue of ineffective assistance of counsel for failure to assert the claim[,]" *id.* (citing *Eagle*, 279 F.3d at 938); *see, e.g., Beasley v. United States*, Nos. CV610–066; CR607–008, 2010 WL 4777535, at *1 (S.D. Ga. Oct. 28, 2010) ("It is well established that 'constitutionally "[i]neffective assistance of counsel . . . is cause'" for excusing a procedural default." (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991))), *report & recommendation adopted*, 2010 WL 4739525 (S.D. Ga. Nov. 16, 2010). Merely asserting a substantive claim of ineffective assistance of counsel does not "establish[] cause to excuse [ ] procedural default"; "*in order to constitute cause, ineffective assistance claims must have merit*." *Reynolds v. United States*, Nos. CV 109-061; CR 106-081, 2010 WL 1006257, at *4 (S.D. Ga. Jan. 26, 2010) (citing *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000)) (emphasis added), *report & recommendation adopted*, 2010 WL 1006253 (S.D. Ga. Mar 17, 2010).

Burton has not, moreover, asserted an ineffective assistance claim related to the

Thus, because any claim that the Court erred is not available to her now, the undersigned must consider Burton's allegations through the prism of *Strickland* (particularly *Strickland* prejudice). And the courts that have considered what Burton appears to allege—or some derivative of it—have generally rejected it. Whether considered under Rule 11, on direct appeal, or *Stickland*, on collateral attack,[12] the applicable inquiry is, very simply, whether Burton's professed ignorance of the correct mandatory minimum actually affected her decision to plead guilty. *See, e.g., Micheaux v. Collins*, 911 F.2d 1083, 1090-92 (5th Cir. 1990), *aff'd*

---

failure to assert certain issues on appeal. *Compare DiPietro*, 251 Fed. App'x at 608 ("[a] defendant may avoid the need to show cause and prejudice on a procedurally defaulted claim by raising a substantive issue of ineffective assistance of counsel **for failure to assert the claim**" on direct appeal (relying on *Eagle*, 279 F.3d at 937 (where the issue was appellate counsel's failure to raise a *Batson* issue on appeal))), *with Beasley*, 2010 WL 4777535, at *1 (alleging "defaulted claims were not raised because his counsel **ineffectually failed to raise them**"), *with Reynolds*, 2010 WL 1006257, at *4 ("counsel's **refusal to raise** this alleged error by the district court **on appeal** does not constitute cause excusing Petitioner's procedural default" (also relying on *Eagle*)) (emphases added). Indeed, Burton took no direct appeal and, moreover, does not now assert a claim for ineffective assistance based on a failure to file an appeal.

[12]    There is undeniably a correlation between the standard for evaluating a Rule 11 violation for harmless error, on direct appeal, and the standard for *Strickland* prejudice. *See, e.g., Roseboro v. United States*, 882 F. Supp. 2d 566, 573 (S.D.N.Y. 2012) (noting that "[n]either the Supreme Court of the United States nor the Second Circuit has ruled on *Strickland* prejudice for Rule 11 violations on collateral review. However, as the Supreme Court recognized in *Dominguez Benitez*, the standard for evaluating a Rule 11 violation on direct review resembles and is closely related to the *Strickland* prejudice standard." (citing *United States v. Dominguez Benitez*, 542 U.S. 74, 81, 83 n.9 (2004)). That correlation does not, however, expand the scope of relief available on collateral review. *See, e.g., United States v. Chapa*, 181 F.3d 96, 1999 WL 346938, at *3 (5th Cir. May 10, 1999) ("stress[ing] that relief under § 2255 'is reserved for transgressions of constitutional rights and for a narrow range of injuries that would not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice'" (quoting *United States v. Payne*, 99 F.3d 1273, 1281 (5th Cir. 1996) (in turn quoting *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)))); *accord Genge*, 279 Fed. App'x at 898.

*en banc*, 944 F.2d 231 (5th Cir. 1991) ("Applying the *Fuller*[13] analysis, we find that any failure by Micheaux's counsel to either advise him properly or correct the trial judge would not have affected Micheaux's decision to plead guilty. . . . [Thus, u]nder the circumstances, we hold that Michaeaux has failed to prove the requisite prejudice resulting from any misadvice to him, or lack of advice to the sentencing judge, by his counsel concerning the minimum range of sentence.").

Furthermore, if a court finds "implausible" a habeas petitioner's "allegation that until he was sentenced, he believed he could receive less than the [correct mandatory minimum sentence,]" there can be no constitutional error with regard to any erroneous advice by counsel concerning the mandatory minimum. *Robinson v. United States*, 196 F.3d 748, 753 (7th Cir. 1999) (rejecting petitioner's argument "that he would not have pleaded guilty but for counsel's erroneous advice that he could receive a sentence of less than 20 years" because he (1) "acknowledged that he understood [the district judge's admonition, at the change of plea hearing,] that 'the best you can hope for . . . is 20 years,' and . . . that he could get a life sentence[,]" and (2) answered no to the court's inquiry "whether anyone had told him he could receive a sentence of less than 20 years"), *vacated on other grounds*, 531 U.S. 1108 (2001).

---

[13] As this language implies, in *Micheaux*, a case concerning erroneous advice as to an applicable minimum sentence, the Fifth Circuit relied on its earlier decision in *United States v. Fuller*, 769 F.2d 1095 (5th Cir. 1985), a case concerning erroneous advice as to an applicable maximum sentence. *See, e.g.,* 911 F.3d at 1091-92 (quoting 769 F.2d at 1098 ("Erroneous advice from counsel or the court that the maximum sentence was greater than allowed by the statute does not necessarily prejudice a defendant unless the facts demonstrate that the error was likely to have altered the defendant's decision to plead guilty. . . .")).

Relatedly, a defect in the Court's plea colloquy, **even when reviewed on direct appeal**,[14] does not equate to *per se* reversal and remand. Instead, it is proper to "review [ ] the record to search for data that might counteract a deficiency in a plea colloquy sufficiently to negate harm, [while also] not los[ing] sight of the importance that Rule 11 places on the role of the district court." *United States v. Johnson*, 1 F.3d 296, 302-03 (5th Cir. 1993) (en banc) (finding harmless error and concluding that, there, where "the record demonstrate[d] that [the defendant] understood that the least incarceration he was likely to receive under the guidelines was 21 years[,]" it was "absolutely clear that [he] understood that he was facing a sentencing range the low end of which was substantially greater than the one-year mandatory minimum")[15]; *see also United States v. Jones*, 143 F.3d 1417, 1419-20

---

[14]     Of course, "[a] section 2255 motion is neither a recapitulation of nor a substitute for a direct appeal." *Carter v. United States*, Nos. 6:11–cv–1066–Orl–31GJK; 6:08–cr–71–Orl–31GJK, 2012 WL 2979049, at *2 (M.D. Fla. July 20, 2012) (quoting *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996)); *cf. United States v. Bazemore*, 929 F. Supp. 1567, 1569 n.4 (S.D. Ga. 1996) ("[D]efendants are routinely instructed not to use § 2255 as a surrogate for a direct appeal." (citation omitted)).

[15]     In *Johnson*, a case decided before *Booker*, the Fifth Circuit "stress[ed] that the determination of harmless error in [such] cases is a fact sensitive inquiry[.]" *Id.* at 303 n.31. And where, unlike *Johnson*, "a mandatory minimum sentence is almost as large as the sentencing guideline range, knowledge of that minimum may well be found necessary for the defendant to understand his situation fully. The failure to inform the defendant of such a mandatory minimum sentence is thus much more likely to affect substantial rights." *Id.* (citation and internal quotation marks omitted)); *compare id., with United States v. Whyte*, 3 F.3d 129, 130-31 (5th Cir. 1993) (per curiam) (distinguishing *Johnson*, and vacating and remanding to allow defendant to replead, where (1) the defendant "was subject to a minimum sentence of ten years rather than the minimum sentence of five years which the district court indicated[, noting:] An error on this scale was likely to cause Whyte to underestimate significantly the sentence he would receive upon pleading guilty"; and (2) the district court's error was not one of omission, as in *Johnson*, but instead "the district court affirmatively misstated the law[ and] the plea agreement corroborated the court's mistake" (footnote omitted)). The court in *Whyte* also rejected the government's theory "that, since defense counsel at one point informed Whyte of the scope of the sentence that confronted him, the court's error was harmless." *Id.* at 130 (footnote omitted).

(11th Cir. 1998) (among other authority citing *Johnson*, and then rejecting, on direct appeal, "the proposition that failure by a district court to verbally instruct a defendant at a Rule 11 plea colloquy of a statutory minimum is subject to a *per se* reversal, regardless of whether or not the defendant is actually aware of any mandatory minimums. Such a proposition would be inconsistent with the Rule 11(h) harmless error standard, though, and we do not accept it where the record shows that the Rule 11 hearing was conducted in the context of a signed and written plea agreement formally presented to the court.")

Turning back to ineffective assistance claims raised on habeas review, although also decided in a pre-*Booker* world, where the guidelines were not merely advisory, *McCleese v. United States*, 75 F.3d 1174 (7th Cir. 1996) is instructive. There, the Seventh Circuit affirmed the district court's denial of habeas relief on a claim that appellate counsel was ineffective for not raising the district court's

---

For this to be true, Whyte would have had to rely on a claim which defense counsel made on one occasion rather than defer to subsequent statements made by the government, his attorney, and the court. Under these circumstances, the risk of prejudice—that Whyte was misled by the court's error—is too great.

*Id.* (footnote omitted); *but cf. United States v. Watson*, 319 Fed. App'x 226, 227 (4th Cir. Mar. 23, 2009) (per curiam) ("Watson faced a guidelines imprisonment range well above the statutory minimum, and he was aware of his expected guidelines range, as evidenced by a letter sent to him by counsel who represented him when he pled guilty, discussing the possibility of his sentence being reduced from thirty years to twenty-four years. . . . *In addition, Watson has not argued that he would not have pled guilty if he had known of the statutory minimum sentence*." (emphasis added)).

Interestingly, in *Whyte*, the court found it significant that the defendant was first informed correctly as to the mandatory minimum sentence, but subsequent communication from the government, along with the plea agreement and the plea colloquy, communicated an incorrect mandatory minimum. *See id.* at 130 nn. 4, 5. Here, in contrast, the mistake as to the mandatory minimum was corrected in the PSR, prior to sentencing.

failure to correctly advise the defendant as to the applicable mandatory minimum during the plea colloquy:

> Even though McCleese was incorrectly told a ten-year mandatory minimum sentence applied, the record discloses that he knew that under the guidelines the lowest sentence he could receive was twelve and a half years. Because the inapplicable mandatory minimum was less than the lowest sentence he knew he could receive, the misinformation regarding the mandatory minimum is just as irrelevant as the failure to inform we discussed in *Padilla*. McCleese was not prejudiced by his appellate counsel's failure to raise this claim on appeal.

*Id.* at 1180[16]; *see also United States v. Timmreck*, 441 U.S. 780, 783-85 (1979) (habeas relief unavailable where all that is asserted is a mere technical violation of Rule 11—*i.e.,* a petitioner relying solely on a court's procedural error as to a plea colloquy, not asserting that he was unaware of the omitted information or would not have pleaded guilty had he been properly informed); *compare id.*, *with* Fed. R. Crim. P. 11(h) ("A variance from the requirements of this rule is harmless error if it does not affect substantial rights.").

Further, at least two district courts in this Circuit have considered—and rejected—claims very similar to Burton's mandatory minimum/ineffective assistance claim.

In *United States v. Williams*, Nos. 5:07cr7/RS/CJK; 5:10cv91/RS/CJK, 2011 WL 6118638 (N.D. Fla. Oct. 5, 2011), *report and recommendation adopted*, 2011 WL

---

[16] In *United States v. Padilla*, 23 F.3d 1220 (7th Cir. 1994), the Seventh Circuit held, if "the record discloses that a defendant was aware when pleading guilty that the sentencing guidelines would subject him to a sentence well in excess of any statutory mandatory minimum likely applicable to his case, the failure to advise him of such minimums during the plea hearing cannot reasonably be said to have affected his decision to accept the plea." *Id.* at 1222 (citing *Johnson*, 1 F.3d at 303)).

6118608 (N.D. Fla. Nov. 21, 2011), the habeas court found "frankly, problematic" a plea colloquy that failed to mention a mandatory minimum, but, nevertheless, concluded that the "defendant's claim is not cognizable under § 2255." *Id.* at *5.

> Collateral relief is available for violations of Rule 11 only when the infraction is a fundamental defect which inherently results in a complete miscarriage of justice or is an omission inconsistent with the rudimentary demands of fair procedure. In other words, a defendant seeking relief under § 2255 must establish that the failure of the District Court to formally comply with the strictures of Rule 11 prejudiced him.

*Id.* at *6 (citations and internal quotation marks omitted). For purposes of habeas review, the court in *Williams* assumed a technical violation of Rule 11, but concluded that the defendant could not show prejudice because the record—a signed plea and cooperation agreement, as well as statements by the defendant regarding the same—documented that he was aware of the mandatory minimum penalty, which was life in prison. *See id.*

Although *United States v. Day*, No. 1:09–cr–6–SPM–GRJ, 2012 WL 1230624 (N.D. Fla. Mar. 14, 2012), *report and recommendation adopted*, 2012 WL 1230823 (N.D. Fla. Apr. 11, 2012), decided in the same court less than one year after *Williams*, dealt with misinformation regarding a mandatory maximum term, the facts underlying that case more closely align with Burton's. In *Day*, the petitioner argued—applicable here—that "his counsel was ineffective because counsel failed to request the Court for permission to withdraw his guilty plea where he was advised of the incorrect penalties at the change of plea hearing and in the plea agreement." *Id.* at *2; *see id.* at *3 ("At his change of plea hearing, Defendant was not advised as to the correct maximum sentence he faced. Apparently, the Magistrate Judge

incorrectly advised the Defendant that he faced a maximum term of imprisonment of 180 months if he pled guilty to the charged offense. The plea agreement also recited that the maximum term of imprisonment was 180 months." (record citations omitted)). Under the guise of Rule 11 error, Day had previously raised this issue on direct appeal to the Eleventh Circuit, which, using

> a plain error standard of review . . . [,] affirmed the judgment and conviction finding that the Defendant cannot show the district court committed a clear error that prejudiced him by affecting his substantial rights because the Defendant could not show a reasonable probability that but for being misled as to the maximum sentence, he would not have entered the plea.

*Id.* at *3.

Not surprisingly, the habeas court went on to find, "[t]he claim here while couched in terms of ineffective assistance of counsel, nonetheless, suffers from the same problem—the Defendant cannot show a reasonable probability that but for being misled as to the maximum penalties, he would not have entered the plea[,]" and found that *Strickland* prejudice could not be established "for at least two reasons." *Id.*

> First, Defendant was advised of the correct maximum penalty in the Presentence Report, which he reviewed, and by the Court at sentencing. At sentencing, Defendant, on the record, acknowledged he understood the correct penalties.
>
> .             .             .
>
> The Presentence Report also disclosed the correct penalty, expressly noting that the maximum penalty Defendant faced was a mandatory minimum 15 years to life imprisonment. Consequently, although the Defendant may have been provided with incorrect information at the change of plea hearing, the Defendant acknowledged that prior to sentencing his lawyer had advised him that he faced a 15 year minimum mandatory sentence and up to life in prison. Defendant

acknowledged to the district judge before he was sentenced that he understood the penalties. Moreover, the Defendant admitted that he had reviewed the pre-sentence report and discussed the sentencing range with his counsel before sentence was imposed.

Secondly, Defendant has not alleged any facts suggesting he would not have pled guilty if he had been advised at either his change of plea hearing or in the plea agreement as to the correct maximum penalty he faced.

*Id.* at *3-4 (footnote omitted).[17]

Burton has similarly failed to show she was prejudiced by any failure of trial counsel concerning the incorrect mandatory minimum advisories contained in the written plea agreement and given by the Court during the plea colloquy.[18] That is,

---

[17]    As to the first reason, the court in Day distinguished *United States v. Siegel*, 102 F.3d 477 (11th Cir. 1996), which the Eleventh Circuit remanded to the district court and directed that court to grant the defendant's motion to withdraw guilty pleas associated with misinformation as to the applicable mandatory minimum and maximum sentences. *See* 2012 WL 1230624 at *3 n.1 (discussing 102 F.3d at 481-82): in *Siegel*, the defendant

> was never advised of the correct penalties before sentencing. Here, in contrast, although the Defendant was misinformed as to the maximum penalties when he entered his plea he was well aware of the correct minimum and maximum penalties by his counsel and in the pre-sentence report before he was sentenced. Notwithstanding that the Defendant was then well aware of the correct penalties at sentencing the Defendant never told the Court that he had a problem or even had second thoughts about his guilty plea. Instead Defendant said nothing and voiced no objection to the district judge when he acknowledged to the district judge that he understood the penalties.

*Id.*

[18]    For purposes of resolving Burton's habeas claims, the undersigned, like the United States (*see* Doc. 111 at 9 (contending that "the incorrectly articulated sentencing range was arguably a Rule 11 error")), will assume that the Court's advisory concerning the applicable mandatory minimum sentence was in error pursuant to Rule 11. However, at the time the parties entered the plea agreement up to and including when the Court conducted the plea colloquy, the amount of cocaine involved in the § 846 conspiracy, to which Burton was pleading guilty, had not been established, a point Burton makes clear in her habeas petition (*see* Docs. 106 at 5; 112 at 3 (Burton "signed a plea agreement, specifically reserving the right to contest the amount and kind of drugs that would be attributable to her.")). Thus, at the time of the plea colloquy, because drug quantity had not been finally determined, five years was a ***possible*** mandatory minimum sentence.

25

she has not shown it to be plausible that her supposed ignorance—professed not until collateral review of her sentence—of the correct mandatory minimum sentence actually affected her decision to plead guilty. *Compare, e.g., Micheaux*, 911 F.2d at 1090-92, *with Robinson*, 196 F.3d at 753. It is, indeed, implausible that Burton believed, up to the pronouncement of her sentence, that she would receive five years—what she alleges she believed was the mandatory minimum sentence. And the record before this Court, on habeas review, is replete with data that counters any deficiency in the plea colloquy, as to the applicable mandatory minimum sentence, sufficiently to negate the harm Burton alleges. *Cf. Johnson*, 1 F.3d at 302-03.

First, during the probation office conference on September 9, 2010 (*see* Doc. 26), which Burton attended with Parker and a translator, she was advised of guideline sentencing ranges starting at 97, 108, and 135 months, which, even at the lowest end, are all well in excess of the purported five year mandatory minimum. *Cf. Hines v. United States*, Civil Action No. 11–700–WS; Criminal No. 10–161–WS–C, 2013 WL 1679269, at *9 (S.D. Ala. Mar. 13, 2013) (The "factual record demonstrates that Hines was fully aware of the sentence he faced by entering a guilty plea, and shows 'he cannot prove that he was prejudiced by counsel's alleged

---

*Compare* 21 U.S.C. § 841(b)(1)(A) (providing for, *e.g.,* a minimum of "not less than 10 years"), *with* § 841(b)(1)(B) (providing for, *e.g.,* a minimum of "not less than 5 years"); *see also United States v. Santo*, 225 F.3d 92, 98 (1st Cir. 2000) ("Where, as here, mandatory minimums and maximums depend on drug quantity and drug quantity attribution is not finally determined until after the plea process is completed, the court is obviously in a tricky position when it comes to being able to accurately advise a defendant, as Rule 11 requires, of the mandatory minimum and maximum penalties faced." (citations omitted)).

failure to advise him of this fact." (quoting *United States v. Smith*, Civil Action No. 11–00523–CB; Criminal No. 05–00231–CB, 2012 WL 4794637, at *5 (S.D. Ala. Oct.9, 2012) (rejecting a similar argument—"that counsel was constitutionally ineffective because she failed to inform him of the mandatory minimum sentence he faced as to Count 6. Counsel's failure to provide accurate advice about the sentencing ramifications of a guilty plea could amount to unreasonable performance"—because the petitioner's contention was also "contradicted by the record"; in particular, the probation office conference report))), *report and recommendation adopted*, 2013 WL 1679187 (S.D. Ala. Apr. 17, 2013).

It is uncontested, moreover, that "the PSR showed the correct range[.]" (Doc. 112, Burton's reply, at 12.) And the motion filed March 27, 2011 (Doc. 86), clearly reflects that Burton's new counsel, Brent Wasserstein, reviewed the PSR with Burton on Mach 9, 2011, and based on his meeting with Burton, counsel requested additional time—which this Court provided—to allow counsel to ensure that Burton understood her guilty plea. Importantly, in support of her habeas petition, Burton does not contest the content of that motion. Finally, Burton acknowledged at sentencing that prior to the sentencing hearing she met with Wasserstein to review the PSR with the assistance of a translator. (*See* Doc. 109 at 11:21-12:11.) Thus, just like the defendant in *Day*, even if Burton was misadvised as to the applicable mandatory minimum prior to the filing of the PSR, the PSR—which she acknowledged reviewing with counsel prior to the sentencing hearing—advised her of the applicable sentencing range. *Cf. Day*, 2012 WL 1230624, at *3.

In sum, Burton has acknowledged that the PSR cleared up any confusion with regard to her sentencing range. (*See, e.g.,* Doc. 112 at 2.) Burton has also acknowledged reviewing that document prior to the sentencing hearing. Accordingly, after her review of the PSR, Burton had ample opportunity to withdraw her guilty plea prior to being sentenced, if that is what she wanted to do then and/or wants to do now. Thus, she cannot now, in the course of a collateral attack of her sentence, imply—much less allege—that an error by counsel, combined with alleged misrepresentations by the United States (in the written plea agreement) and the Court (in the plea colloquy) as to the statutory mandatory minimum, gives rise to a Sixth Amendment violation.

## C.    Sentencing

As to sentencing, Burton concedes that "[r]elevant conduct drove her guidelines and thus her sentence" (Doc. 112 at 3), and contends that the failure to object to (1) the drug quantity level as calculated in the PSR[19] and (2) the inclusion in the PSR of a managerial role enhancement "had the result of having a first time offender be given an unfair sentence" (*see id.* at 2-4; *see also id.* at 3-4 ("Had her attorneys disputed the drug quantity and or her role, the government would have been required to present evidence to justify the incorrect assertions in the PSR, even if by a preponderance of the evidence and the court would have been required

---

[19]    "The uncontested statements of anonymous [confidential informants] unfairly[, Burton contends,] held her accountable for over 50 kilograms of cocaine and base." (*Id.* at 3; *compare id., with* Doc. 71, final PSR, ¶ 35 (indicating that two confidential informants told agents that Burton arranged for and/or orchestrated the transportation of 53 kilograms over 12 separate occasions).)

to rule on the dispute." (citations omitted)).

Had the drug quantity and the inclusion of the role enhancement pursuant to § 3B1.1(b) been challenged, it would have been the United States' burden to establish both by a preponderance of the evidence. *Compare United States v. Lawrence*, 47 F.3d 1559, 1566-69 (11th Cir. 1995) ("When a defendant challenges one of the factual bases of his sentence as set forth in the PSR, the Government has the burden of establishing the disputed fact by a preponderance of the evidence." (citations omitted)), *with United States v. Hernandez*, 145 F.3d 1433, 1440 (11th Cir. 1998) ("The burden of proof for establishing that a sentence enhancement is warranted lies with the prosecution and it is the duty of the district court to insure that the prosecution carries its burden of proof." (citing *Lawrence*, 47 F.3d at 1566-69)) *and United States v. Ndiaye*, 434 F.3d 1270, 1300 (11th Cir. 2006) ("The Government has the burden of proving the applicability of guidelines that enhance a defendant's offense level." (citing *United States v. Cataldo*, 171 F.3d 1316, 1321 (11th Cir. 1999))); *see also United States v. Horta*, 451 Fed. App'x 820, 821-22 (11th Cir. Dec. 8, 2011) (per curiam) ("[T]he government's burden of proof . . . must be satisfied with 'reliable and specific evidence.'" (quoting *United States v. Sepulveda*, 115 F.3d 882, 890 (11th Cir. 1997) and citing *Lawrence*, 47 F.3d at 1566)).

Merely asserting that a PSR's drug amount calculation, as well as enhancements included therein, should have been challenged and, if challenged, would have been subject to proof by a preponderance of evidence—which is all Burton has done—does not, however, equate to proving *Strickland*'s prejudice

prong. Instead, Burton must show that—and she has not shown that—"the decision reached would reasonably likely have been different" had counsel objected to the drug amount calculation or the managerial role enhancement. *Evans*, 699 F.3d at 1270 ("the prejudice inquiry" requires a court to "ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors"; moreover, "[t]he likelihood of a different result must be substantial, not just conceivable" (citations omitted)); *see, e.g., Mobley*, 2013 WL 4166553, at *6 (overruling any objection to the Magistrate Judge's finding that, because the petitioner failed to provide evidence to show that the result would have been different had objections to enhancements included in the PSR been made, she failed to meet "her burden of showing *Strickland* prejudice as to" counsel's failure to make objections); *see also Smalls v. United States*, No. CV411–292, CR408–315, 2013 WL 516533, at *6 (S.D. Ga. Jan. 7, 2013) (where petitioner failed to rebut the evidence of record, as provided in the presentence report, he could not "demonstrate *Strickland* prejudice"—"While [petitioner] insists that it was the government's burden to prove his involvement at sentencing, he neglects to acknowledge that he bears the burden here, and he has utterly failed to carry it . . . ."), *report and recommendation adopted*, 2013 WL 508390 (S.D. Ga. Feb. 11, 2013); *cf. Reid v. United States*, No. No. 4:10–CV–583 CAS, 2010 WL 3829397, at *9 (E.D. Mo. Sept. 23, 2010) (*Strickland* not met where petitioner "has not shown there is a reasonable probability that his objections would have been sustained by [the sentencing judge], resulting in a different base offense level, and that he would have received a

different sentence" (footnote and citation omitted)).

As to the managerial enhancement, Burton herself raised an objection at sentencing (*see* Doc. 109 at 10:12-11:10) and the transcript reflects that Judge Granade considered Burton's objection despite that no formal written objection was made to the PSR. (*See id.* at 10:23-11:10 (in response to Burton's argument that she was being described as a leader because she is the only one that does not speak English, the Court responded, "Well, that's not the case. The facts as presented in your plea agreement that you agreed to and your factual resume and the presentence report indicated that you had responsibility -- oversight responsibility over at least some of the others involved in this offense. And accordingly, that gives you extra points as a manager or supervisor, not necessarily a leader in the sense of someone whom others want to follow, but in the sense of legal responsibility for this offense.").) This is separate reason to find that the *Strickland* standard cannot be met as to counsel's failure to object to this enhancement. *See United States v. Allen*, 287 Fed. App'x 638, 642-43 (10th Cir. July 9, 2008) ("With respect to Allen's assertion that his trial counsel should have objected to the enhancement for being a leader or organizer, the district court first noted that Allen himself complained at sentencing concerning this enhancement, and that, as a result, the issue was before the Court even though his counsel did not object to the four level increase." (internal quotation marks omitted)).

Finally, Burton contends that Wasserstein was constitutionally ineffective at sentencing for failing to make a "colorable argument for a [ ] variance" pursuant to

18 U.S.C. § 3553.  Again, wishing that Wasserstein had argued—or at least argued

more convincingly—that certain variables warranted a downward departure for

Burton is not the same as showing *Strickland* prejudice on habeas review.  Like her

other sentencing claims, her variance argument fails because Burton has not shown

that the sentence imposed "would reasonably likely have been different" had

counsel requested a variance pursuant to § 3553.  *Evans*, 699 F.3d at 1270; *see also*

*Balbuena v. United States*, 523 Fed. App'x 588, 599 (11th Cir. July 11, 2012) (per

curiam) (Petitioner "does not and cannot show (as required by *Strickland*) that

there is a reasonable probability that, but for [counsel's] failure to raise an

argument for a variance on this ground, the district court would actually have

imposed a shorter sentence." (citing *Strickland*, 466 U.S. at 694 ("A reasonable

probability is a probability sufficient to undermine confidence in the outcome."))).

### D.    Evidentiary Hearing

This Court "'shall' hold an evidentiary hearing on a habeas petition '[u]nless

the motion and the files and records of the case conclusively show that the prisoner

is entitled to no relief.'"  *Scott v. United States*, 325 Fed. App'x 822, 824 (11th Cir.

Apr. 29, 2009) (per curiam) (quoting 28 U.S.C. § 2255(b)).

> "[I]f the petitioner 'alleges facts that, if true, would entitle him to
> relief, then the district court should order an evidentiary hearing and
> rule on the merits of his claim.'"  *Aron* [*v. United States*], 291 F.3d
> [708,] 714-15 (quoting *Holmes v. United States*, 876 F.2d 1545, 1552
> (11th Cir. 1989)).  Yet the "district court is not required to hold an
> evidentiary hearing where the petitioner's allegations are affirmatively
> contradicted by the record, or the claims are patently frivolous."  *Id.* at
> 715.  Thus, the petitioner needs to allege "reasonably specific, non-
> conclusory facts that, if true, would entitle him to relief.  If the
> allegations are not affirmatively contradicted by the record and the

> claims are not patently frivolous," the requirement of an evidentiary hearing is triggered and the petitioner must offer proof at that hearing. *Id.* at 715 n.6.

*Id.*; *accord Lopez v. United States*, 522 Fed. App'x 684 (11th Cir. June 26, 2013) (per curiam) (in which the Eleventh Circuit recently vacated an order denying habeas relief—on the ground that counsel violated a defendant's constitutional right to testify—and remanded the case for an evidentiary hearing); *see also Williams v. United States*, Civil No. 08-00513-CG-N; Crim. No. 04-00197-CG, 2010 WL 1382762, at *5 (S.D. Ala. Mar. 3, 2010) (setting forth two additional grounds for not conducting an evidentiary hearing: (1) where the petitioner's version of the facts has already been accepted as true (citing *Turner v. Crosby*, 339 F.3d 1247, 1274-75 (11th Cir. 2003)); and (2) where the "the district court can determine the merits of the ineffectiveness claim based on the existing record" (quoting *Schultz v. Wainwright*, 701 F.2d 900, 901 (11th Cir. 1983))), *report and recommendation adopted*, 2010 WL 1382761 (S.D. Ala. Apr. 1, 2010).

On the existing record, Burton has not presented non-conclusory facts that, if true, would entitle her to relief. Accordingly, the undersigned finds there is no need for an evidentiary hearing.

## III.  <u>Certificate of Appealability</u>

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 18 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's

denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may only issue where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2).

Burton is not entitled to a certificate of appealability on her ineffective-assistance-of-counsel claims. Where a habeas petition is being denied entirely on the merits of an underlying constitutional claim, as is the case for Burton's IAC claims here, a COA should issue only when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[.]" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also id.* at 483-84 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983), includes a showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (quotation modified). With respect to Burton's ineffective-assistance-of-counsel claims, the undersigned recommends that the Court find that reasonable jurists could not debate whether his § 2255 motion to vacate should be resolved in a different manner or that any of the remaining issues presented is adequate to deserve encouragement to proceed further. Accordingly, Burton is not entitled to a certificate of appealability as to these claims.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation, the objecting party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *See, e.g.*, *Brightwell v. Patterson*, No. CA 11-0165-WS-C, 2011 WL 1930676, at *6 (S.D. Ala. Apr. 11, 2011), *report & recommendation adopted*, 2011 WL 1930662 (S.D. Ala. May 19, 2011)[20]; *Griffin v. DeRosa*, No. 3:10cv342/RV/MD, 2010 WL 3943702, at *4 (N.D. Fla. Sep. 20, 2010) (providing for same procedure), *report & recommendation adopted sub nom. Griffin v. Butterworth*, 2010 W: 3943699 (N.D. Oct. 5, 2010).

## IV.    Conclusion

Because the undersigned is of the opinion that, as to her ineffective-assistance-of counsel claims, Burton has not shown that her rights were violated, it is **RECOMMENDED** that the motion be **DENIED**. It is **FURTHER RECOMMENDED** that the Court find that the petitioner is not entitled to a certificate of appealability and, therefore, is not entitled to appeal *in forma pauperis*.

## V.    Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or

---

20      It should be noted that in that proceeding, the Eleventh Circuit (Judge Hull) also denied the petitioner's motion for certificate of appealability, on October 11, 2011. (*See* Doc. 14 in CA-11-0165-WS-C.)

anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 2nd day of May, 2014.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**